UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

| | |
|---|---|
| RODERICK WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 0:19-CV-131-DCR-MAS |
| ) | |
| JARROD BAILEY, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |
| ) | |

**REPORT AND RECOMMENDATION**

This matter is before the undersigned pursuant to the district court's referral under 28 U.S.C. § 636(b) to prepare proposed findings of fact and conclusions of law on any dispositive motion. [DE 28]. The remaining defendant in this case, Jarrod Bailey ("Bailey"), filed a motion for summary judgment on November 11, 2020. [DE 35]. Despite the Court's warning in its August 7, 2020 Order that "[f]ailure to respond to a motion shall be grounds for the Court to conclude that any arguments in opposition to the motion have been waived[,]" pro se Plaintiff Roderick Williams ("Williams") failed to respond to the motion for summary judgment. [DE 34 at Page ID # 276]. For the reasons stated below, the Court recommends Bailey's motion be granted.

**FACTUAL BACKGROUND**

This case arises from Williams' claims that his Eighth Amendment rights were violated during his incarceration at Eastern Kentucky Correctional Complex ("EKCC"). Williams alleges he injured his knee playing basketball at EKCC on November 28, 2018. [DE 1 at Page ID # 4]. He states EKCC subsequently sent him to Morgan County ARH Hospital, where he had an X-ray

1

and hospital staff told him he had a "facture[d] chip bone." [DE 1 at Page ID # 4]. Williams alleges Bailey, a physical therapist assistant at EKCC, provided him physical therapy twice per week at EKCC. [DE 1 at Page ID 5]. Williams' physical therapy began on January 10, 2019, after an evaluation on January 8, 2019. [DE 35-1 at Page ID Williams claims that while he told Bailey he "felt progress", he repeatedly asked for Bailey to "put [him] in for [an] MRI to see" if Williams had "any ligament damage or joint damage and his response was, 'you only dealing with "arthritis" that what happen when you a [*sic*] injury.'" [DE 1 at Page ID # 5]. Williams attended physical therapy with Bailey until his discharge from treatment by Bailey's supervisor on March 5, 2019. [DE 37 at Page ID # 509]. Williams' discharge from physical therapy reflected he had "met all goals" and had current pain at "0/10" with the pain at the worst being "3-4/10." [DE 37 at Page ID # 509].

Between March and September 2019, Williams had fallen again and re-injured the same knee. Ultimately, Williams did obtain magnetic resonance imaging ("MRI") of his knee on September 11, 2019, that revealed a tear in his lateral meniscus and anterior cruciate ligament. [DE 37 at Page ID # 524]. Williams filed a grievance on September 24, 2019, asking that he receive more medical treatment for his injured knee. The grievance was informally resolved when EKCC referred Williams to an orthopedic surgeon in October 2019. [DE 35-3 at Page ID # 323]. Williams filed this lawsuit in December 2019. [DE 1].

Defendant Bailey now moves the Court for judgment as a matter of law on the claims against him because Williams failed to administratively exhaust them, and even if he did, Bailey was not deliberately indifferent to Williams' serious medical needs.

## **LEGAL STANDARD**

Summary judgment is appropriate when citation to facts in the court record, including depositions, documents, affidavits, admissions, and other material, demonstrate there are no

2

genuine issues of material fact. Fed. R. Civ. P. 56 (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1987). The party moving for summary judgment bears the burden of informing the district court of the basis for its motion and demonstrating the absence of a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 323. The non-moving party may not "rely on subjective beliefs to show a genuine dispute" nor may they "defeat summary judgment by conclusory responses." *ACLU v. Mercer County*, 240 F. Supp.2d 623, 625 (E.D. Ky. 2003). Moreover, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In determining whether the "evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law[,]" the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989); *Anderson*, 477 U.S. at 255.

## ANALYSIS

### A. FAILURE TO EXHAUST

Bailey argues Williams failed to exhaust his administrative remedies as required by the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), because Williams did not specifically name Bailey in his prison grievances. Thus, according to Bailey, he was deprived fair notice of Williams' complaints against him. In support of this argument, Bailey attached Williams' grievance form and EKCC's grievance policy. [DE 35-2, 35-3, and 35-4]. EKCC's grievance policy requires the aggrieved prisoner to "include all aspects of the issue and identify all individuals [. . .] so that all problems concerning the issue or individuals may be dealt with during step 1." [DE 35-4 at Page ID # 334].

Williams did not specifically mention Bailey in his grievance. Williams' only potential reference to Bailey was in the following sentence: "I been going to medical letting it be known

3

that my knee is still giving me problem and also talk to the physical therapy letting them know it's not getting any better and their response was 'that it's arthritis' which not true from the results from my MRI." [DE 35-3 at Page ID # 323]. This statement was insufficient to put Bailey on notice that Williams was making allegations against him, individually. *See Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x 885, 890 (6th Cir. 2009) (affirming district court's dismissal of claims against defendants not named in prison grievance where prison policy required each defendant to be named specifically in the grievance); *Cf.*, *Jones v. Bock*, 549 U.S. 199, 218-19 (2007)(concluding "that exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances" where the prison grievance procedures "make no mention of naming particular officials" because "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.").

Accordingly, the Court finds that Williams' claims against Bailey should be dismissed for failure to exhaust his administrative remedies as required by the PLRA. Because the Court also—and alternatively—finds Williams' claims against Bailey substantively lacking, the Court provides an analysis of his deliberate indifference claims below.

### B. EIGHTH AMENDMENT CLAIMS

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). Such a claim states a cause of action under 42 U.S.C. § 1983. *Id.* "To succeed on such a claim, a plaintiff must show: 1) he had a serious medical need; and 2) a defendant was aware of that need, and acted with deliberate indifference to it." *Shough v. Management &Training Corp.*, 2018 WL 295576, at *8 (N.D. Ohio 2018).

1. **Serious Medical Need**

A "serious medical need" is an objective component to an Eighth Amendment deliberate indifference claim. "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gunther v. Castineta*, 561 Fed. App'x. 497, 499 (6th Cir. 2014) (*quoting Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008)). Stated differently, "a medical need is serious if the average person would surely deem it to be one that required professional treatment." *Id*. at 500.

Bailey only argues that he did not act with deliberate indifference. The fact that EKCC sent Williams to the hospital immediately after his injury, kept him in medical housing for a approximately one moth after his release from the hospital, and provided him physical therapy appointments twice per week for about seven weeks, plus Bailey's apparent concession of the point, leads the Court to conclude that Williams had a serious medical need that had been diagnosed by a physician. Consequently, the Court finds that Williams satisfied this prong of the deliberate indifference analysis.

2. **Deliberate Indifference**

In contrast to the objectivity that applies to whether an inmate had a "serious medical need," the "deliberate indifference" prong of Williams' claim is measured subjectively. "Deliberate indifference requires a degree of culpability greater than mere negligence, but less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Miller v. Calhoun Cty.*, 408 F.3d 803, 813 (6th Cir. 2005) (internal citations and quotation marks omitted).

Bailey supported his motion for summary judgment with Williams' medical records from the relevant period. [DE 37]. These records reveal Bailey administered physical therapy on Williams on ten occasions between January 10, 2019, and February 28, 2019. [DE 37]. In

5

addition, Bailey evaluated Williams on January 8, 2019, prior to commencing treatment, and Bailey's supervisor assessed and discharged Williams from physical therapy on March 5, 2019. [DE 37 at Page ID # 509]. Williams avers that during these physical therapy appointments, he repeatedly requested that Bailey refer him for an MRI and that Bailey was deliberately indifferent to his medical needs by failing to do so. Bailey does not contest Williams' allegation that he requested an MRI, but rather that Bailey did not deny or delay providing Williams adequate medical treatment. The Court agrees.

Williams, by his failure to respond to the motion for summary judgment, has not offered any facts or evidence to contest Bailey's motion. *See Kendall v. Hoover Co.*, 751 F.2d 171, 175 (6th Cir. 1984) ("The failure to respond to a motion for summary judgment or to request an extension of time to file a response thereto is inexcusable neglect."); *Starr v. Hill*, 2012 WL 12868269, at *1 (W.D. Tenn. Feb. 14, 2012) ("[F]ailure to respond to a motion for summary judgment inevitably hinders a party's ability to avoid summary judgment as that party will not have set forth any affidavits or other materials demonstrating that there is a genuine issue for trial."). Bailey testified in his sworn affidavit that as a physical therapist assistant, he works under the direction of a licensed physical therapist and does not have "the training or authority to diagnose medical conditions, order imaging tests, or otherwise independently discharge patients[.]" [DE 35-6, ¶ 2-3, Page ID # 359]. Williams admits in his Complaint that he "told Jarrod Bailey [he] felt progress" but that "something didn't feel right" and "asked Jarrod Bailey multiple times" to schedule an MRI. [DE 1 at Page ID #5]. Williams alleges Bailey did not schedule the MRI because he said Williams was "only dealing with 'arthritis'" and "that 'doc' doesn't like approving these requests for a MRI because [*sic*] the fees and costs." [DE 1 at Page ID #5].

6

Taking the facts in the light most favorable to Williams, the Court cannot find that Bailey was deliberately indifferent to Williams' serious medical needs because he did not refer Williams for an MRI.  By Williams' own admissions, corroborated by the medical records, Williams told Bailey at each physical therapy appointment that he was improving, and Bailey believed Williams was suffering from arthritis, implying his condition did not justify an MRI in Bailey's opinion.  Bailey continued to treat Williams until Williams told him he was "doing much better" and "ambulated into rehab with normal gait."  [DE 37 at Page ID # 471].  At the worst, Bailey and Williams had a difference of opinion regarding whether Williams needed an MRI.  Even if Bailey could have referred Williams to a doctor to order an MRI,[1] his failure to do so does not rise to the level of deliberate indifference where he believed a difference course of medical treatment was appropriate.  The United States Supreme Court and the Sixth Circuit Court of Appeals have strongly cautioned trial courts against substituting their own medical judgments for that of the prison medical providers.  "Where a prisoner alleges only that his medical care was inadequate, the federal courts generally are reluctant to second-guess medical judgments, and a disagreement over the wisdom or correctness of a medical judgment is not sufficient for a deliberate indifference claim."  *Harris v. Buskirk*, 2019 WL 5681661, at *3 (6th Cir. July 10, 2019) (citations omitted).  "[T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment." *Estelle v. Gamble*, 429 U.S. 97, 107 (1976).

---

[1] Neither party clarifies whether it was possible for Bailey to make this referral.  Williams implies that it was possible but Bailey believed the doctor would not order the MRI; Bailey argues only that *he* did not have the authority and licensure to order an MRI, but he is silent on whether it was possible for him to refer Williams to a doctor that could have ordered an MRI.  The Court assumes, for the sake of this motion, that it was possible for Bailey to make such a referral.

Williams has not presented even a scintilla of evidence in favor of his deliberate indifference claim against Bailey. "Officials may be shown to be deliberately indifferent to such serious needs without evidence of conscious intent to inflict pain. However, the conduct for which liability attaches must be more culpable than mere negligence; it must demonstrate deliberateness tantamount to intent to punish." *Horn by Parks v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994). On the facts before the Court—that Bailey assessed Williams, treated him twice weekly for nearly two months, and that Williams told Bailey he was feeling better—no reasonable jury could find that Bailey acted deliberately and with an intent to punish Williams by refusing to refer him for an MRI. The facts in the Complaint, even when construed under the liberal pro se pleading standard and read in the light most favorable to Williams, do not show any culpability on Bailey's part. Because there is no genuine issue of material fact upon which the jury could find that Bailey was deliberately indifferent to Williams, the Court recommends the District Court grant judgment in favor of Bailey as a matter of law.[2]

## CONCLUSION

For the reasons stated herein, the Court **RECOMMENDS** that Bailey's Motion for Summary Judgment [DE 35] be **GRANTED**. Pursuant to FED. R. CIV. P. 72 and 28 U.S.C. § 636(b) and (c), the parties shall file objections to this Report and Recommendation within fourteen days from the date of entry of the same.

This 1st day of February, 2021.

---

[2] Bailey advances several other arguments the Court need not examine. Bailey spends a significant portion his brief discussing the treatment other individuals or entities provided to Williams. While this provides context for the Court, Bailey is the only remaining defendant before this Court. The Court can only decide this motion based on the allegations against and actions of Bailey, not the other defendants dismissed from this case or non-parties to this case.



Signed By:
Matthew A. Stinnett
United States Magistrate Judge